that we'll move to the first argument on the calendar that is Seneca Nation v. I guess Cuomo. Let me make sure council are here for the appellant. Easley Kiernan for appellants. And for the appellee. James Tice for the appellee. All right, great. Okay, so Mr. Kiernan, you've got 10 minutes out of the gate, 10 minutes total but two minutes you've reserved for rebuttal. So that gives you eight minutes out of the gate. You may proceed. Thank you, Your Honors, this case is barred. It is barred by the 11th amendment, and it is barred by collateral estoppel. Indeed, this court has already upheld the dismissal of the nation's challenge through a easement. The nation attempts to plead around this court's earlier decision by naming state officers as defendants and proceeding under ex parte young, but the nation cannot do so for two reasons. First, the nation fails to allege any continuing violation of federal law by these state officers. And second, the relief the nation seeks is retrospective. And as the alleged federal law violation, the core claim in the complaint is that the state violated the non intercourse act in 1954, when it purchased the easement from the nation allegedly without federal approval. And that's a past wrong and any relief the nation could seek to remedy that wrong is necessarily backward looking, unavailable under ex parte young. So the nation seeks an order compelling the state to obtain a new easement. And these particular state officers are named as defendants, precisely because they are authorized to obtain an easement on behalf of the state. But the problem with the nation's claim is that there is no federal law obligating the state to purchase an easement. The nation relies, I guess I'm a little confused where you are right now. So you mean collateral estoppel is where you have argued previously you want to you're not starting with that you're starting with the 11th amendment. I'm starting with ex parte young. Oh, okay. So you're at ex parte young. I thought you wanted to start with collateral estoppel. All right. I think the nation's main defense is that it can proceed under ex parte young. So I just want to address that head on. And the nation relies primarily on its treaty rights. And indeed, the Treaty of but the nation does not complain about the state's operation of the thruway does not suggest that the state's operation of the thruway interferes with its free use and enjoyment of the land. Nor does the treaty of foreign affirmatively obligate the state to purchase an easement. So the relief the nation seeks would not directly bring an end to any ongoing federal law violation. And that takes this case out of ex parte young. Ex parte young also does not. There's no dispute that the original easement was in violation of the non intercourse act, correct? For purposes of this? That doesn't seem to be an issue. It's not an issue in this case right now. The only real question seems to me here is whether the relief that they're seeking is perspective or retroact retrospective. And it seems to me that one of the things that they're concerned about is that the that that this act which is the easement which violated the original the original law is is resulting in in profits from their land that is going that are going to the state in the form of tolls. And why isn't that perspective? That's the relief they seek. They want future tolls. The nation does specifically seek an order compelling the state to obtain a new easement or in the alternative barring the state from collecting tolls until the state obtains a new easement. That is perspective. I'll grant them that. But it does not remedy any ongoing federal law violation. The essential relief the nation seeks is to get the state back to the bargaining table purchase the same easement it bought in 1954 at a much higher price. That's the essence of the case. And that's essentially monetary relief. It's backward looking based on the violation that allegedly occurred in 1954. There's no continuing violation of federal law by these particular state officers. Well, they have alternative remedies, right? And so the problem with ex parte young is it you can't be going going back and recouping past damages, but future damages, future future harm can be remedied this way. If there is any, I mean, you know, when one can parse through what they're asking for, they may be asking for a read a redo of the of the of the easement. But they also may be asking for tolls or to have them put an escrow until the completion of this case and then given to them. But that's all future after after filing a complaint. So isn't part of the at least part of the the remedy they're seeking compliant with ex parte young. It is not and the Supreme Court and Papa's on address this exact kind of situation. In that case, the plaintiffs brought a constructive trust claim in addition to a new claim. The constructive trust claim sought damages, both retrospective and prospective. The plaintiffs sought a continuing stream of income based on the lost corpus that Mississippi unlawfully sold in the 1850s 60s. But even then the Supreme Court held that those future damages that prospective relief was still tied to an earlier past wrong, the wrong that occurred in the 1800s. And that's why the nation here can't seek relief. The wrong is tied to the state's alleged violation of the Non Intercourse Act. And there's just no federal law violation by these state officers right now. And even if the nation otherwise could proceed under ex parte young, it would still be barred because this is the decision that the state owns the easement. And this is a permanent easement. So the state enjoys substantially all benefits of ownership and control over the disputed land. And the relief the nation seeks is premised on the invalidity of the state's real property interest. So any relief the nation could obtain in district court would necessarily divest the state of its near total control over the disputed land. And that's exactly how the Supreme Court characterized the functional equivalent of a quiet title action in Coeur d'Alene. And not only that, the easement protects the state's special sovereignty interests in a vital public highway, much like the submerged lands and navigable waterways at issue in Coeur d'Alene. The New York State Brewery has a uniquely public character. Under public authorities law, section 353, its purpose is to benefit the people of the state of New York. The state built it. The state made it. That would be a pretty broad exception. I mean, Coeur d'Alene goes on for pages about submerged lands and the special place that they play in, you know, our nation's history. If it's just that anything that's got a road is also subject to the same restrictions, it would seem to me that's basically saying then that any property interest is going to be exempt, right? Is that what you're arguing? It's not any property interest. I'm having a little trouble hearing you actually, Mr. Kuehner. You raise the mic or increase your volume. I apologize. I'll come closer to the microphone. Is that better? Yeah. It's not any property interest. And the way I think about Coeur d'Alene is analogized property to a bundle of sticks. In Coeur d'Alene, the tenants were essentially seeking the entire bundle of sticks. They weren't seeking one stick out of the bundle. They were trying to obtain full control over the disputed land. And here, it's very similar. It's a much smaller piece of land. It's 300 acres. But still, the state has a permanent easement and the nation wants an order recognizing that the nation actually holds all the bundle of sticks. And then even more than that, the nation wants an order compelling the state to purchase that bundle of sticks back from them at a higher price. And that's intrusive release and unavailable under Ex parte Young. I see my time is up, so I'll reserve the rest of rebuttal. All right. Well, you've got two minutes for rebuttal. We'll now hear from Mr. Tice. Thank you. Thank you, Your Honor. May it please the court, James Tice on behalf of plaintiff, the Seneca Nation. Let me begin where most of the questioning was during my colleague's argument. And that's whether or not we properly pled a claim under Ex parte Young. The district court correctly found that the nation's complaint satisfied both of Ex parte Young straightforward requirements. First, the nation pleaded an ongoing violation of its federal treaty rights and other federal laws. And second, it seeks equitable relief against state officials with power to end those federal law violations. And I want to be very clear about what the federal law, the ongoing federal law violations are, because I think that's important to resolving the issues here. It is the current ongoing violation of the Canandaigua Treaty guaranteeing the free use and enjoyment to the nation of the Cataraugus Reservation lands. And that is the ongoing violation of federal law that the nation pleaded in its complaint on page J.A.11. So you think that treaty bars the nation from selling land? That seems to be what you're saying. No, that treaty guarantees to the nation the free use and enjoyment of its land. But then they sold this. They sold the easement, right? They did that. It protects it against alienation. I think what the confusion is and what Mr. Kiernan's argument suggested was that there was only a discrete violation of federal law. I think it's helpful to think about this as really two different violations of federal law. The first one was the Intercourse Act. That is the federal law violation that forms the backdrop to the current situation we're in. That's a one-time violation, right? I think there's an argument it could be continuing, but that's not the continuing violation that we're here today about. The continuing violation that we're focused on and what the complaint focuses on, again at J.A.11, paragraphs 3, 13, 50, is the ongoing violation of the free use and enjoyment of our federal treaty. The reason is because the easement was never valid. Ever since that point, the state has been using and has been inviting other people to use the nation's reservation land in contravention of its treaty rights. That is an ongoing violation of law. That is, in fact, the same ongoing violation of law that's been recognized in a number of cases, including, for example, the Mill Locks case from the Eighth Circuit that we cited, which has ongoing violations of treaty rights. I want to be clear about this. It would seem to me that the 1794 Treaty, in essence, would have made the Non-Intercourse Act invalid because it restrained the ability of the nation to sell easements or rights to its land. Well, that's not true, Your Honor, because the 1794 Treaty also imposes restraints on alienation. It's a federal treaty, obviously, between the nation and the U.S. government. The U.S. government, through its trust responsibility, is able to make contingent the alienation rights of the tribe, the nation here. Okay. Can they alienate or not alienate? It seems to me if they can't sell easements in this land, then I'm not sure what relief you're seeking. Well, they can sell land, but it's subject to federal restraints on alienation. In particular, in this case, the federal government, under the Non-Intercourse Act, was required to essentially sign off on the transfer of the easement right. An accurate way of saying that you're really relying on the one-time violation of the Act in 1954. It's hard to see how the treaty really carries the weight that you want it to. I don't think that's right, Your Honor, because if you could imagine that the state just never obtained an easement at all, I think we would very clearly have a claim for an ongoing violation of the free use and enjoyment of our lands because the state would be using it without any permission whatsoever. So the Non-Intercourse Act sets the backdrop. It creates the circumstance we're in, where the state is now using the land without permission. And again, I would point out that it was undisputed in the magistrate judge's opinion that those federal requirements were never complied with. So I think that for that reason, the treaty guarantees free use and enjoyment. That was the violation we pled, and that violation of treaty rights is ongoing every that the land is used without the nation's permission. I'd also point out that for Ex Parte Young, Your Honor, this is not a heavy burden at this stage. I think in the NAACP case from 2019, this court ruled that the allegations of the ongoing violation, as well as the perspective relief, just need to be essentially non-frivolous and substantial. They need not be, excuse me, neither insubstantial nor frivolous was the question. And again, I think that we have clearly pled a substantial and non-frivolous claim in that the ongoing violation of treaty rights is the same one recognized in the Millocks case. It was the same one recognized in the Seneca Nation case from the Western District of New York from 1975. And it's also, frankly, the same ongoing violation of law that's been recognized in both Coeur d'Alene and Western Mohegan. Both of those cases recognize that an ongoing violation of treaty rights is the sort of ongoing violation that can be brought pursuant to an Ex Parte Young claim, unless the special circumstances of Coeur d'Alene exist. I think the second prong of Ex Parte Young is whether or not we're seeking prospective relief. And I think what I heard my friend on the other side say is that he acknowledges that, or the state officers acknowledge, that the relief that we are seeking would actually remedy the harm. And the answer is it absolutely would remedy the harm. That is why we're bringing this suit pursuant to Ex Parte Young. And the reason is an injunction, the primary relief we're seeking is an injunction for the state officers to obtain a valid easement over the property. If the state officers obtain a valid easement over the property, then our free use and enjoyment of the land will no longer be disturbed because the state will be using the land pursuant to this nation's permission. Right now, they're doing so. You can look at that two ways. You want a valid easement because that's what's necessary going forward. That's your Ex Parte Young argument. The other side is saying, well, what you're really doing by obtaining a valid easement is correcting a past harm. And therefore, it's retrospective. And so does that sort of crystallize the two sides? And why is your side better? Well, I would agree with you, Your Honor, if we said, you know, we only got $75,000 back in several decades ago. Now we want a million dollars. And so give us the difference. That would clearly be retrospective relief. But again, I think if there had never been an easement at all, certainly we would be entitled to compensation for an ongoing violation of our nation's property, our reservation, federal trust land. The idea that cars, I think we mentioned in our complaint at several places that the state, paragraph 38, motorists have continuously entered the nation's territory. Paragraph 53, our nation's land will continue to be invaded. I think, you know, absent any legal claim. But you're not saying that that shouldn't happen. You're just saying that they should have to pay for it. I mean, you're really just asking for a do over on a 1954 easement that you think was a bad deal, right? I don't think that's a that's an accurate way to frame with respect to the complaint. The gravamen of our complaint is that we're seeking compliance with our treaty rights. You're seeking, I mean, among the things that you're requesting is basically a requirement that they renegotiate the easement, right? Your Honor, it's not a request to negotiate, renegotiate an easement. We are asking them to conform their conduct with federal law going forward by having permission, conform their conduct with federal law to obtain an easement, to have permission to use this reservation land. That is the gravamen of the complaint. The predicate to that, of course, I guess, is that the prior easement is not, it's not a valid easement. In effect, are you saying it's void? Are you saying it's voidable? Is it a nullity? It's a nullity, Your Honor, in the sense, and that is, again, kind of the backdrop of the complaint. But the gravamen of the complaint is that every day, the state is using and inviting others to use our land without the nation's permission. No, no, no. It clearly has the nation's permission. What it doesn't have is the imprimatur of federal approval as required by an act that's no longer on the books, right? You're not saying that the nation didn't agree to this easement. You're that they didn't comply with then existing law. The nation agreed to it in 1954, Your Honor, but in a circumstance where the transaction was illegal under federal law. And for that reason, the state never accepted or never got proper permission to use the land. And for many decades, the nation has told the state that it is using the land without permission. It has asked the state to seek tolls on its behalf going forward. It has sued the state in its peacemakers court, but the state did not show up. It sought other forms of relief and tried to negotiate with the state, but the state has- I want to talk about the tolls. We're running out of time, but I want to talk about the tolls. So you're asking that the state basically be enjoined from collecting tolls, but you're not asking for the tolls themselves, right? Well, Your Honor, like I said, we want the state's conduct to conform with federal law going forward. We think the way to do that and the best way to do that is an injunction that would require them to obtain a valid easement going forward. That injunction would- that relief would come under the district court supervision. After all, we're coming here to this court and to the district court in equity. This is an equitable remedy. The court has powers to oversee that process and ensure that it's a fair and equitable process. I don't understand how enjoining the state from collecting tolls is going to provide a remedy to the nation. Well, it's sort of a lesser form of relief, I think, Your Honor, to our primary form. The main thing is that the state is using our land and in fact profiting off our land. It is as if the state was coming in and collecting timber or something on the reservation without our permission. And so as a lesser form of relief, we've also asked the state to at least stop profiting off the illegal use of the land and violation of our free use and enjoyment until such time as an easement can be obtained. But I would say that the primary form of relief we're seeking, both equitable and or injunctive and declaratory, is simply to ask the state to conform its conduct with federal law on a going forward basis and in particular to stop the ongoing violation of the free use and enjoyment of the nation's reservation. All right. Thank you, Mr. Tice. We'll now hear from Mr. Kiernan for two minutes of rebuttal. Thank you, Your Honor. I want to address a couple of points quickly. First of all, the Treaty of Canandaigua does permit the nation to sell land. It states that the land shall remain the Seneca Nations until they choose to sell the same to the people of the United States who have the right to purchase. Of course, the treaty recognizes that the nation can do what it will with the land. In 1954, it chose to sell a permanent easement to the state of New York. And the nation does not complain about the state's continued operation of the throughway. Of course, an ongoing violation of treaty rights can support an ex parte young suit. We don't dispute that. But typically, an ex parte young order tells state officials, stop this conduct, which violates federal law. And the nation is just not seeking that kind of about the operation of the throughway. It just wants the state to purchase a new easement. But there is no federal law obligating the state to do that. And what's more, the nation's relief could be extraordinarily disruptive to the state's operation of the throughway. There's no real limit to what the nation is asking for. They want to the nation would have all the leverage here. They would have total control over the easement and could ask for an exorbitant price. Of course, the nation does not limit its request in the complaint itself, because that would look exactly like a damages request. But even so, what the nation is asking for is basically a carte blanche to bring the state back to the negotiating table and extract an extraordinary sum of money, just because the state allegedly violated the 1950 act in 1954. And I'd like to offer just a briefly just a roadmap for how the court. But apart from that, what was the effect of violating the non intercourse act in 1954? He's saying it was in effect, there is no valid easement at the present time. And therefore, if this was brand new, and they had all of a sudden, somebody did a survey and realized, oh, my gosh, the state has built a road over the over over Indian land, for which there was never an easement. Now, and therefore, they're encroaching on the land going forward. Why wouldn't? Why wouldn't the remedy that they're seeking be perfectly appropriate? The remedy is not appropriate, because they're fine with the throughway, you want the throughway where it is. It's as if a landowner won't walk up one day and found a road. I'm not sure that anybody, anybody wants to through way to be anywhere else. That's not a realistic outcome. I mean, are you suggesting that somehow they might be able to interfere with through way and require require the state to build a detour? No, I think that all they want is, is a recognition going forward of their an easement going forward that is proper. That is what they want. But again, that's the functional equivalent of a quiet title action, because the state holds the easement. So they're seeking an order, recognizing that the state doesn't hold the easement, that kind of claim can't be brought in federal court. And they want the state to purchase the same exact easement at a higher price. And that's essentially backward looking belief, which is unavailable under ex parte. So unless the court has any further questions, I wish the court to reverse the district court's decision and dismiss this case under the 11th amendment collateral estoppel in this court's binding precedent in the earlier decision. Thank you. All right. Thank you both. We will reserve decision, but well argued. We will now